Amanda was born October 3, 1996, three months premature. After three months in the hospital, Amanda was allowed to go home with appellant. Amanda spent approximately two weeks at home before she returned to the hospital due to a medical emergency. Since that time, due to her fragile health condition, Amanda has either been in the hospital or in a foster home which specializes in caring for children with severe physical handicaps. Amanda's foster mother, a nurse with twenty-three years of experience, testified that Amanda's daily medical needs are numerous and complicated. Amanda has a shunt in her head which allows cranial fluid to drain into her stomach. Her respiratory system is extremely delicate and requires a machine to concentrate oxygen for Amanda. Amanda cannot eat normally; she has a tube extending from her stomach with a flip-top through which she is fed. Amanda's eyesight is impaired, and she is unable to communicate verbally. She does not cry when she is wet or hungry.
This case is further complicated by the fact that appellant suffers from multiple sclerosis ("MS") and diabetes. In addition, Dr. Joseph Valentine Cresci, Jr., a psychiatrist, determined that appellant has a psychiatric condition which he labeled "infantile personality." Due to Amanda's special needs and appellant's added difficulty in caring for Amanda, CCDHS filed a dependency complaint on March 4, 1997. On April 14, 1997, temporary custody was granted to CCDHS. A case plan was executed in which Amanda's father did not participate because he has left the country and has had no subsequent contact with appellant or Amanda.
Mindy King, the CCDHS case worker, worked with appellant over the course of several months to facilitate visitation and implement the case plan. However, on February 3, 1998, CCDHS filed a motion for permanent custody. The matter was heard by a magistrate on April 2 and 3, and May 19, 1998. The magistrate found by clear and convincing evidence that it was in Amanda's best interest to grant permanent custody to CCDHS. Appellant filed objections to the magistrate's decision, but on July 13, 1998, the trial court overruled appellant's objections and adopted the magistrate's findings and conclusions in their entirety. Appellant filed this timely appeal and presents two assignments of error for our review.
First Assignment of Error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DIVESTING PERMANENT CUSTODY OF THE CHILD IN THE ABSENCE OF REASONABLE EFFORTS BY CLERMONT COUNTY CHILDREN SERVICES TO REUNIFY THE CHILD WITH APPELLANT.
R.C. 2151.419(A)[1] provides in part:
 At any hearing held pursuant to section * * * 2151.353
of the Revised Code at which the court removes a child from his home or continues the removal of a child from his home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case * * * has made reasonable efforts to prevent the removal of the child from his home * * *. The agency shall have the burden of proving that it has made those reasonable efforts. (Emphasis added.)
See, also, In re Lacy (July 18, 1994), Butler App. No. CA93-06-101, unreported, at 10.
Appellant's argument that reasonable efforts were not made is primarily based upon the fact that her weekly visits did not begin until two months after the reunification plan had been executed. Despite the delay, our review of the record shows that CCDHS did make reasonable efforts to implement the reunification plan.
Initially, King provided appellant with a list of Amanda's medical providers, including addresses and phone numbers. King encouraged appellant to contact each medical provider to work with them directly in understanding Amanda's medical conditions. Appellant failed to contact any of Amanda's medical providers. King testified that every time she spoke with appellant she emphasized that the case plan was appellant's ticket for reunification with Amanda. King often explained difficult terminology and the requirements of the case plan to appellant.
King also explained to appellant that appellant's personal hygiene and the cleanliness of her apartment must be improved because of Amanda's fragile immune system. King explained that appellant would not be able to smoke around Amanda because of her dependence on pure oxygen. Despite King's attempts, appellant failed to understand any reason why her hygiene had to be improved. King testified that at each visit, appellant's nails were dirty, her hair was dirty and unkempt, and her clothes smelled of smoke.
King also organized several visits with Amanda for appellant from July 3, 1997 to September 24, 1997. Because of Amanda's medical needs, a great deal of medical equipment and a specially trained person must accompany Amanda to each visit. The first two visits were held at the children's hospital. Since the hospital was not a comfortable environment, King arranged alternate locations for the following visits despite the difficulties involved. King organized the next visit at a nearby McDonald's. King and appellant decided the busy restaurant was not a good location. King then contacted a local church and arranged to use the nursery.
On August 19, 1997, King brought Amanda, the necessary equipment, and a nurse to the church, but appellant failed to show up for the visit. Appellant claimed she did not have adequate directions. On September 3, 1997, King brought Amanda and the nurse to the church for another visit. Appellant appeared, and overall had a successful visit with Amanda. The next visit was scheduled for September 10, 1997; appellant cancelled that visit because it was raining, and she didn't want Amanda to be out in the bad weather. Several days later, on September 16, 1997, King arranged another visit at the church, but appellant failed to show up because she forgot about the visit.
The final visit took place at the church on September 24, 1997. Appellant arrived fifteen minutes late, accompanied by a teenage friend, her son Henry, and an unidentified man who remained in the car. Appellant eventually revealed that the man was a "run away." King called the police, and it was then determined that the man had several outstanding warrants for his arrest. He was taken into custody in the church parking lot during the visit. Also during the visit, appellant's son, Henry, repeatedly cursed at King and the nurse and was belligerent about washing his hands before handling Amanda.
Our review of the record shows that the trial court was correct in finding that CCDHS made reasonable efforts to implement the reunification plan. Appellant's first assignment of error is overruled.
Second Assignment of Error:
 THE TRIAL COURT'S JUDGMENT AWARDING PERMANENT CUSTODY OF THE CHILD TO THE CLERMONT COUNTY CHILDREN SERVICES [SIC] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Under R.C. 2151.414(B), a court may not award permanent custody unless the court determines by clear and convincing evidence that it is in the best interest of the child and that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(B) (1). When an appellate court reviews a trial court's decision to award permanent custody to a county agency, the appellate court may not reverse a decision supported by competent, credible evidence as being against the manifest weight of the evidence. In re Puckett
(Aug. 15, 1994), Butler App. No. CA94-01-001, unreported, at 3, citing In re Lay (1987), 43 Ohio App.3d 78, 80.
In determining whether a child cannot be placed with the parents within a reasonable time or should not be placed with the parents, R.C. 2151.414(E) requires the court to determine by clear and convincing evidence that one or more of sixteen enumerated factors exist as to each of the child's parents, including
 (1) Following the placement of the child out side the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child[.]
King testified that she made two visits to appellant's apartment. At the first visit, King and a nurse went to the apartment to determine if it would be suitable for visitation. There were pinworms on the counter top, and a very pungent smell of cigarette smoke. A gas grill and propane canister were stored in the baby's room. King stated that in general, the conditions were unsanitary, and when these concerns were expressed, appellant did not seem to understand how the conditions of her home were incompatible with Amanda's good health.
At the second visit, King stated that the apartment conditions had deteriorated. When King arrived, she found appellant sitting on the floor in the fetal position. Appellant stated that she had not taken her insulin and had not slept in five days because of "the drunks" outside. King saw Henry asleep in the bedroom with piles of junk lying everywhere, including pornographic materials and four plastic baggies full of prescription drugs. Appellant failed to remedy the conditions of her apartment to make it suitable for reunification with Amanda. We recognize that appellant has subsequently moved to a new apartment; however, we cannot speculate, at the risk of Amanda's health, that appellant's former habits will suddenly change for the better.
In addition, Dr. Cresci testified that his evaluation of appellant revealed that she suffered from an "infantile personality," and her responses were completely unpredictable. Dr. Cresci also testified that appellant's mental condition will most likely worsen as her MS causes further physical breakdown. Dr. Cresci stated that appellant's medical and psychological needs, coupled with Amanda's special needs, made it absolutely impossible for appellant to provide for Amanda adequately.
Based upon the foregoing, we find competent, credible evidence to support the trial court's determination that Amanda could not be placed with appellant within a reasonable time or should not be placed with appellant. This finding was not against the weight of the evidence.
R.C. 2151.414(B) also requires the trial court to make a best interest determination. In determining whether permanent custody is in the child's best interest, the court must consider all relevant factors, including those listed in R.C. 2151.414(D) as follows:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
* * *
(3) The custodial history of the child * * *;
 (4) The child's need for legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
Due to her medical needs, Amanda has spent only two weeks of her life in appellant's care. Most of Amanda's life has been spent in the hospital or in foster care. With the shunt in Amanda's head and the fragile state of her respiratory and digestive systems, Amanda requires monitoring twenty-four hours a day. Amanda's foster mother, with her twenty-three years of nursing experience, is able and willing to provide the necessary medical treatment.
Amanda needs legally secure permanent placement which can only be achieved through a grant of permanent custody. Though appellant has demonstrated that she wishes to care for Amanda, we find competent, credible evidence supporting the trial court's determination that granting permanent custody to CCDHS is in Amanda's best interest. The trial court's determination was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] We note that the applicable statutory provisions have been revised as of March 18, 1999. Our analysis is based upon the statutes existing at the time this case was decided.